UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BARBARA LYNICE POLLOCK,

        Plaintiff,

v.                                            Case No. 6:18-cv-1296-Orl-18JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

        Defendant.

_____

### REPORT AND RECOMMENDATION[2]

### I. Status

Barbara Lynice Pollock ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability income benefits ("DIB"). Plaintiff's alleged inability to work is the result of fibromyalgia, high blood pressure, heart issues, and anemia. See Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed November 7, 2018, at 56, 67, 212. Plaintiff

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

filed an application for DIB on April 10, 2015,[3] alleging an onset disability date of February 9, 2014. Tr. at 182. The application was denied initially, Tr. at 56-64, 65, 66, 90-92, and upon reconsideration, Tr. at 67-77, 78, 79, 96-100.

On September 19, 2017, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 32-55. Plaintiff was fifty-three years old at the time of the hearing. Tr. at 36 (indicating date of birth).The ALJ issued a Decision on November 24, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-26.

On June 15, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On August 8, 2018, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises two issues: 1) "[w]hether the ALJ erred in determining that [Plaintiff] has the residual functional capacity [('RFC')] to perform light work after failing to adequately weigh and consider the medical opinions"; and 2) "[w]hether the ALJ properly relied on the testimony of the [VE] after posing and relying on a hypothetical question that did not adequately reflect the limitations of [Plaintiff]." Plaintiff's Brief Addressing the Merits of Appeal (Doc. No. 20; "Pl.'s Br."), filed February 6, 2019, at 2-3; see Pl.'s Br. at 8-12 (first issue), 12-14 (second issue). Although phrased broadly, Plaintiff's first issue focuses solely on the ALJ's evaluation of the opinion of Plaintiff's treating podiatrist, Dr. Joanne Balkaran, DPM. See id. at 10-12. On March 29, 2019, Defendant filed a Memorandum in Support of

---

[3] Although actually completed on April 10, 2015, see Tr. at 182, the protective filing date of the application is listed elsewhere in the administrative transcript as April 7, 2015, see, e.g., Tr. at 56, 67.

the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 15-25. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 9, 2014, the alleged onset date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative joint disease of the lumbar spine, fibromyalgia/inflammatory polyarthropathy, bilateral Achilles tendonitis and obesity." Tr. at 15 (emphasis and citation omitted). At step three,

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 3 -

the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b). Specifically, [Plaintiff] can sit, stand and walk up to six hours each in an eight-hour workday. She can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She can frequently handle and operate hand controls with the left and right hand. She can occasionally climb ramps, stairs, ladders, ropes and scaffolds. She can frequently balance, but only occasionally stoop, kneel, crouch and crawl. [Plaintiff] can have occasional exposure to extreme cold, vibration and hazards, such as unprotected heights and moving machinery.

Tr. at 19 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing past relevant work as a laboratory technician." Tr. at 24 (emphasis omitted). The ALJ then proceeded to make alternative findings regarding the fifth and final step of the sequential inquiry. Tr. at 24-25. At step five, after considering Plaintiff's age ("49 years old . . . on the alleged disability onset date"), education ("limited education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," Tr. at 24, such as "fast food worker," "housekeeper," and "storage facility rental clerk," Tr. at 25. The ALJ concluded that Plaintiff "has not been under a disability . . . from February 9, 2014, through the date of th[e D]ecision. Tr. at 26 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245

F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff takes issue with the ALJ's evaluation of Dr. Balkaran's opinions and with the ALJ's reliance on the testimony of the VE. The undersigned addresses these issues in turn.

**A. ALJ's Evaluation of Dr. Balkaran's Opinions**

**1. Parties' Arguments**

Plaintiff contends the ALJ "did not appropriately weigh the opinion of Dr. Balkar[a]n" because "at no time in the [D]ecision [did] the ALJ state the weight assigned to the opinion [of] this doctor." Pl's Br. at 10 (citations omitted). According to Plaintiff, "[t]he records from Dr. Balkar[a]n reveal [Plaintiff] had significant problems with walking, and the doctor

- 5 -

specifically indicate[d] that [Plaintiff] should elevate her foot and limit activities." Id. at 11 (citation omitted). Plaintiff asserts that "this opinion is extremely important to the outcome of the case" because the VE appeared to testify that "the need for elevation of a lower extremity would interfere with employment." Id. Plaintiff contends that because the ALJ failed to assign a weight to Dr. Balkar[a]n's opinion, "it is impossible for any reviewing court to determine whether the [D]ecision of the ALJ is supported by substantial evidence." Id. at 12.

Responding, Defendant argues that "[t]he ALJ did not err in failing to assign weight to Dr. Balkaran's . . . treatment note/treatment plan because it was not a medical opinion." Def.'s Mem. at 7 (citation omitted). According to Defendant, "[t]he treatment note lacked any indication of Dr. Balkaran's judgment about Plaintiff's prognosis and statement of what Plaintiff can still do despite her impairments." Id. (citation omitted). "Nevertheless," argues Defendant, "even if the ALJ should have addressed the treatment plan to elevate [Plaintiff's] leg and limit activity, any error was harmless because the ALJ does not leave this Court to ponder why he made the decision he did." Id. at 8 (citation omitted). Defendant asserts that "the ALJ considered Plaintiff's left foot and ankle impairment." Id. According to Defendant, "[r]emand for the ALJ to further consider Plaintiff's left heel spur and ankle impairment would not change the administrative outcome and would be a wasteful activity." Id. at 9 (citation omitted).

**2. Applicable Law**

The Regulations[5] establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

With regard to a treating physician or psychologist[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because

---

[5] As noted, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions, 82 Fed. Reg. 5844-01, 5844. Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claim, unless otherwise noted.

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

[7] A treating physician or psychologist is a physician or psychologist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation

treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychologist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychologist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychologist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychologist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

---

required for the medical condition. See 20 C.F.R. § 404.1502.

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 3. Plaintiff's Treatment with Dr. Balkaran / Analysis

Dr. Balkaran is a podiatrist at the Ankle & Foot Center of Central Florida, who treated Plaintiff for ankle and foot pain. The administrative transcript contains three treatment notes from Dr. Balkaran: one from June 19, 2015 and two from July 2015 (July

6 and July 20). Tr. at 442-49.

On June 19, 2015, Plaintiff presented with complaints of pain in the "rear aspect" of both heels of her feet. Tr. at 442. Dr. Balkaran noted pain to palpation and inflammation in both Achilles tendons. Tr. at 443. She also noted "pain along the tendon insertion." Tr. at 443. X-rays revealed arthritic changes and "cystic changes to the left dorsum of the navicular." Tr. at 443. Plaintiff's muscle strength for all "prime movers of the lower leg, ankle, and foot was graded at 5/5 . . . ." Tr. at 443. Plaintiff's ankle, rearfoot, midfoot, and forefoot joints were "[s]table . . . to manual stress." Tr. at 443. Dr. Balkaran observed Plaintiff had a "stable foot posture." Tr. at 443.

Dr. Balkaran diagnosed Plaintiff, in part, with fasciitis, "[e]quinus deformity of foot," "other benign neoplasm of connective and other soft tissue," "Achilles bursitis or tendinitis," and "Tenosynovitis of foot and ankle." Tr. at 444. Dr. Balkaran discussed with Plaintiff "the use of custom made functional orthotic devices to reduce the stress strain along the [A]chilles tendon and plantar fascia at its insertion into the calcaneus and help slow further progression of the posterior calcaneal exostosis and to help rebalance intrinsic and extrinsic musculature throughout the lower extremity." Tr. at 444. "Treatment included instructions on oral anti-inflammatories[ and] dispensing of heel lift." Tr. at 444. Dr. Balkaran prescribed her a cream, Medrol Dosepak, and Jubilia. Tr. at 444.

On July 6, 2015, Plaintiff reported to Dr. Balkaran that she felt "10% better" and felt that "the pain [was] better," but she "[s]till ha[d] pain to the back and bottom of the heel." Tr. at 445. Dr. Balkaran noted there was "tenderness on palpation of [Plaintiff's] posterior calcaneus in the region of the insertion of the [A]chilles tendon." Tr. at 445. Plaintiff reported that the Medrol Dosepak helped with the pain, but she had to stop taking it

because it elevated her blood pressure. Tr. at 445.

On July 20, 2015, Plaintiff returned to Dr. Balkaran with complaints of pain in her left heel, which Plaintiff rated as a 10/10. Tr. at 447. Plaintiff, however, had "no pain to the [A]chilles area." Tr. at 447. Plaintiff had "[p]ain while walking" that was "[n]ot as bad when sitting but still present." Tr. at 447. Dr. Balkaran examination of the left ankle revealed "mild pain to palpation over the anterior talofibular ligament, sinus tarsi, medial and lateral gutter." Tr. at 448. Plaintiff's posterior tibial tendon was "intact," and strength was "graded at 5/5." Tr. at 448. Dr. Balkaran observed "no significant foot or ankle deformities bilaterally" and no "focal motor or sensory deficit[s in the] lower extremities." Tr. at 448. Dr. Balkaran administered an injection into the left heel "to reduce symptoms." Tr. at 448. Dr. Balkaran treatment plan included the following:

> [I]ce, elevate, left heel injection.
> [Plaintiff] advised on proper shoewear - tennis shoes.
> Recommend ankle brace and inserts - [Plaintiff] didn[']t get at this time.
> Stretching demonstrated. Rx tramadol.
> Limit ac[tivi]ty

Tr. at 449. Dr. Balkaran recommended a follow-up visit in two weeks "or sooner should problems arise." Tr. at 449. It appears Plaintiff did not return to Dr. Balkaran as there are no other treatment notes from Dr. Balkaran in the administrative transcript.

As an initial matter, the undersigned rejects Defendant's argument that Dr. Balkaran's treatment notes, including the treatment plan, are not medical opinions. See Winschel, 631 F.3d at 1179 (finding that treating physician's treatment notes constituted "medical opinions" because "[they] included a description of [Plaintiff]'s symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[ ] from [a] physician . . . that reflect[s] judgments about the nature and severity

of [Plaintiff's] impairment(s)' . . . ."); Lara v. Comm'r of Soc. Sec., 705 F. App'x 804, 811 (11th Cir. 2017) (stating that physician's "treatment notes may constitute medical opinions if the content reflects judgments about the nature and severity of [Plaintiff's] impairments"); Hart v. Astrue, No. 3:10-cv-531-J-TEM, 2011 WL 4356149, at *5 (M.D. Fla. Sept. 19, 2011) (unpublished) (concluding that letter from treating physician stating that the plaintiff needed to elevate her legs "constitutes a medical opinion of a treating physician and as such may be due the deference stated in the Regulations").

Nevertheless, although Dr. Balkaran's treatment notes contain medical opinions, the ALJ's failure to specifically assign a weight to these opinions was harmless. As noted, Plaintiff argues the ALJ's failure to weigh Dr. Balkaran's opinion that Plaintiff should elevate her leg requires remand because the VE appeared to testify that the need to elevate the leg would preclude all work. See Pl.'s Br. at 11. The VE actually testified that the need to elevate the leg <u>at waist level 50% of the day</u> would interfere with "production" and would preclude sedentary work "at the light level of exertion." Tr. at 54.[8] Plaintiff's argument is unavailing. Dr. Balkaran instructed Plaintiff to ice and elevate her left leg after receiving an injection in her left heel. See Tr. at 449 (indicating treatment plan included "ice, elevate,

---

[8] Plaintiff does cite the VE testimony. See Pl.'s Br. at 11. Specifically, the VE was questioned and testified as follows:

> Q[:]  Okay, and then lastly, if an individual intermittently throughout the work day, they would require -- they would need to elevate their left lower extremity at waist level, what impact if any -- and let's just say 50% of the day -- what impact if any, would that have on their ability to sustain that employment?
> A[:]  Employers would have to make special accommodations to allow someone to elevate at waist level and it would interfere with
> ATTY: Oh, you can stand.
> VE:   -- production.
> ATTY: Yeah, you can stand. I'm sorry.
> VE:   Sedentary work would not be sustainable at the light level of elevation.

Tr. at 54.

left heel injection"). Dr. Balkaran, however, did not opine that Plaintiff needed to elevate her leg <u>at waist level 50% of the day</u>, much less that she would need to do so perpetually. <u>Compare</u> Tr. at 54 (VE testimony), <u>with</u> Tr. at 449 (Dr. Balkaran's treatment plan). Dr. Balkaran's opinion was simply a post-injection treatment plan from July 2015.

As to the remaining opinions in Dr. Balkaran's treatment notes, the ALJ discussed these records in detail in the Decision. <u>See</u> Tr. at 20-21, 24.[9] It is clear from the Decision that the ALJ accepted the impressions and diagnoses in Dr. Balkaran's treatment notes. <u>See</u> Tr. at 20-21, 24. Dr. Balkaran's opinions do not contradict the assessed RFC. <u>See</u> Tr. at 443 (June 19, 2015 treatment note indicating Plaintiff's ankle, rearfoot, midfoot, and forefoot joints were "stable . . . to manual stress"; muscle strength for all "prime movers of the lower leg, ankle, and foot was graded at 5/5"; and Plaintiff had "stable foot posture"); Tr. at 445 (July 6, 2015 treatment note indicating Plaintiff felt "10% better" and felt the pain was "better"); Tr. at 447-48 (July 20, 2015 treatment note indicating Plaintiff had "[n]o pain to the [A]chilles area. No pain at its insertion"; no "focal motor or sensory deficit[s in the] lower extremities"; "strength graded at 5/5"; "no significant foot or ankle deformities bilaterally"; and "[e]xamination of the [left] ankle reveal[ed] mild pain to palpation over the anterior talofibular ligament, sinus tarsi, medial and lateral gutter"). To the extent Plaintiff argues Dr. Balkaran's treatment notes showed she had difficulty walking, the ALJ correctly stated that it was noted by another treatment provider that Plaintiff walked unassisted. Tr. at 24; <u>see</u> Tr. at 518 (May 4, 2017 treatment note indicating that Plaintiff "walks unassisted"). Further, Dr. Balkaran administered an injection to reduce the pain in

---

[9] The ALJ does not refer to Dr. Balkaran by name; rather, he refers to the Ankle & Foot Center of Central Florida. <u>See</u> Tr. at 20, 24. All the treatment notes from the Ankle & Foot Center of Central Florida in the administrative transcript were authored by Dr. Balkaran. <u>See</u> Tr. at 442-49.

- 13 -

Plaintiff's left heel, and it appears Plaintiff had no more problems because she did not return to Dr. Balkaran. See Tr. at 449 (instructing that Plaintiff follow up in "2 weeks or sooner should problems arise").

Upon review, it is clear that Dr. Balkaran's treatment notes are consistent with the ALJ's analysis and RFC finding. Accordingly, any error in the ALJ's failure to specifically assign weight to the opinions expressed in the treatment notes is harmless. See, e.g., Wright v. Barnhart, 153 F. App'x. 678, 684 (11th Cir. 2005) (unpublished) (finding that "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

**B. Reliance on VE's Testimony**

### 1. Parties' Arguments

Plaintiff contends the ALJ erred in relying on the VE's testimony because, according to Plaintiff, the ALJ posed a hypothetical question to the VE that failed to adequately reflect Plaintiff's limitations. Pl.'s Br. at 12-13. Specifically, Plaintiff asserts the RFC finding and the hypothetical question are unsupported by substantial evidence because "the ALJ failed to properly weigh the opinions in the record." Id. 14. Defendant states that the ALJ "properly relied on VE testimony to find Plaintiff [can] perform her past relevant work . . . ." Def.'s Mem. at 10 (citations omitted). According to Defendant, "Plaintiff failed to prove that she needed to elevate her leg and she failed to prove that she [cannot] perform her past relevant work or the other jobs identified by the ALJ." Id. at 12.

**2. Applicable Law**

An ALJ poses a hypothetical question to a VE as part of the step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ may rely on the VE's testimony in determining at step four whether an individual is capable of performing any past relevant work. 20 C.F.R. § 404.1560(b)(2). In determining an individual's RFC and later posing a hypothetical to the VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling" (internal quotation and citation omitted)); Wilson, 284 F.3d at 1227 (stating that "for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments" (citation omitted)).

**3. Analysis**

Plaintiff correctly acknowledges that the limitations included in the hypothetical question posed to the VE are the same as those in the ALJ's RFC finding. Pl.'s Br. at 13; see Tr. at 19 (RFC finding); Tr. at 49-50 (hypothetical). Plaintiff's argument on this issue rests on her contentions regarding the medical evidence, addressed above. See Pl.'s Br. at 14.

For the reasons discussed above with respect to the ALJ's evaluation of Dr. Balkaran's opinions, the ALJ's RFC finding is supported by substantial evidence. By

including in the hypothetical question to the VE the same limitations from the RFC finding, the ALJ appropriately accounted for all of Plaintiff's impairments. There was no error, therefore, in the ALJ's reliance on the VE's testimony.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**RECOMMENDED**:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** in Jacksonville, Florida on July 31, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:

Honorable G. Kendall Sharp
United States District Judge

Counsel of Record